1    Edgar Lee Warren                              C08·3077 MHP

2    35 County Center Dr.

3    Oroville, CA 95965

4

5    UNITED States DISTRICt COURt

6    NORTHERN DISTRICt OF CALIFORNIA

7

8    Edgar Lee Warren          Amend Attach Plaintiffs

9    Plaintiffs,               AMENDED COMPLAINt For

10   VS.                       DECLARAtORY and INJUNCtIVE

11   GOVERNOR ARNOLD           RELIEF

12   SCHARZENEGGER,            [42 U.S.C § § 1983 & 1985 ]

13   Butte County Jail,

14   Top medical staff and

15   Doctors,

16   Clic Law library

17   Sergeant Brownfield

18   Sergeant Cooley
     OFFICER THORNTON

19                             JURISDICTION

20   1. This a class action FOR a declaratory Judgement

21   that Plaintiff(s) constitutional Rights are being

22   Violated by the conditions of his/her confinement

23   in the [name of institution], and For a permanent

24   injunction preventing defendant(s) From

25   continuing to violate sentenced and unsentenced

26   INMatEIS ARE PRisoner's Rights While acting under

27   color of law 2. Jurisdiction is conferred on this

28   court under 29 U.S.C. 1343 Providing For

1  jurisdiction over claims arising under
2  42 U.S.C. 1983 and 1985, and 28 U.S.C. 2201 and
3  2202 Relating to declaratory judgements. This
4  court has pendant jurisdiction to adjudicate
5  claims arising California law.
6
7                    PARTIES
8  3. Plaintiff(s) are Resident(s) of the united
9  States, county of Edgar Lee Warren
10 State of California and are incarcerated at
11 [name of institution].
12 Plaintiff(s) Edgar Lee Warren are charged with
13 offenses uncied law of California and are
14 awaiting trial in the [name of court] For the
15 county of Butte State of California in their
16 criminal cases, Bail has been set by a Judge
17 of those courts. Due to their indigency. they
18 have been unable to make bail and are
19 incarcerated at the Jail solely to insure
20 their appearance at trial and For not other
21 Reason, under the law, Plaintiff(s) are
22 Presumed innocent.
23 5. Plaintiff(s) Edgar Lee WaRReN meNtally
24 Rotarded and mental PRoBLems Is Waiter
25 To go To Napa State Hospital - 2100 Napa-vallejo
26 Highway Napa, CA 94558-6293#
27 Public (707) 253-5000# TDD (707) 253-5768#
28 Fax (707) 253-5513# confined on a parole hold.
   or serving time after a parole or Probation
   violation hearing.

1  Edgar Lee Warren is asking The Federal Court

2  APPOINTMENT COUNSELS ON COMPLINES

3  UNDER The Civil Rights Act, Title 42 U.S.C

4  S1983# Plaintiffs AMENDED COMPLAINt FOR

5  DECLARAtORY and INJUNCtIVE RELIEF

6  [42 U.S.C §§ 1983 & 1985] however

7  Edgar Lee Warren cannot Read And Write But

8  Warren Did What He can To get This Right

9  and so on and so on Edgar Lee Warren with

10  The Regional center iN BakersFeild of

11  caliFoRNia FOR The mentally Retarded

12  and mental PRoblems Is FoR Edgar Lee

13  Warren they have his File there ask FoR

14  Warren service coordinator WORKGR

15  there Phone number (661)327-8531# and The

16  COMPLAINTS May19-2008# May29-2008#

17  June16-2008# June 23-2008# Is To be

18  AttAch and AMENDED COMPLAINts FOR

19  DECLARAtORY and INJUNCtIVE RELIEF

20  42 U.S.C §§ 1983 & 1985] and so on and so

21  on Thank you FOR your time

23      Edgar Lee Warren

24      (PlaintiFF's signature)

6.    The plaintiffs are representatives of a class within the meaning of Rule 23, Federal Rules of Civil Procedure. The plaintiffs represent two separate sub-classes, the first, hereinafter referred to as Class I), represented by plaintiffs *Edgar Lee Warren*, consists of all unconvicted, pre-trial detainees incarcerated at [name of institution]. The second sub-class (hereinafter referred to as Class II), represented by plaintiffs *Edgar Lee Warren*, is an ongoing one and includes post-trial detainees, convicted and sentenced prisoners, who are or will in the future be incarcerated at [name of institution] to serve their sentences. The classes are proper for the following reasons:

(a)    The members of the classes are so numerous that joinder of all of them is impracticable;

(b)    The members of the classes are readily identifiable from the defendant's records.

(c)    There are questions of law and fact common to each class;

(d)    The claims of the plaintiffs are typical of the claims of their respective classes;

(e)    The defendants have acted or refused to act on grounds generally applicable to each class;

(f)    The plaintiffs will fairly and adequately protect the interests of the class.

7.    Defendant(s) *Governor Arnold Schwarzenegger* is, and at all times herein relevant has been, Sheriff of the County of *Sacramento* and keeper of [name of institution] pursuant to California Government Code §26605 and Penal Code §§4000, 4005 and 4015, and as such is charged with the duty of maintaining and operating [name of institution] and promulgating and enforcing rules for the governance and safekeeping of prisoners incarcerated the [name of institution] and for the supervision of _____ in the *Butte* County *California* Department.

8.    Defendant *Butte County Jail and Doctors Clic Law Library* is, and has been at all times herein relevant, an Undersheriff and Chief Administrative Officer in the *Butte* County Sheriff's Department, and as such is responsible for maintaining and operating county jail facilities, including [name of institution], and promulgating and enforcing rules for the care and treatment of prisoners at the Jail.

9.    Defendants *Sergeant Cooley* *Sergeant Browfield* are, and have been at all times herein relevant, Chief of Corrections, *Butte* County Jail, and Captain of Corrections of the *Butte* County Jail, and as such are responsible for the administration of the day to day operations of the Jail.

10.    Defendant *Clic Law Library* is a lieutenant of the *Butte* County Sheriff's Department and as such supervises, manages, and administers the *Butte County* Jail. *Governor Arnold Schwarzenegger*

11.    Defendants *Doctors Browfield-Cooley Butte County Jail Top Medical Staff and* are sergeants in the *Butte* County Jail and act as "watch commanders" supervising the conduct of subordinate jail staff and jail inmates.

12.    Defendants *Clic Law Library* are *Captain* County Sheriff's Department officers assigned to the Jail and as such control and govern the everyday operations of the Jail and the lives of the prisoners. These defendants are representatives of a class, within the meaning of Rule 23, Federal Rules of Civil Procedure, consisting of all _____ County Sheriff's Department officers below the rank of lieutenant assigned to the Jail. This class (hereinafter referred to as Defendant Class I) is ongoing and includes all _____ County Sheriff's Department officers below the rank of lieutenant who are

or will be in the future assigned to the Jail.

13.   Dr. _Waterinate contriback_ is a physician employed by the _Siiy_ County Health Department and/or the _Butte_ County Sheriff's Department and is assigned to the Jail and as such is responsible for providing prisoners with medical care.

14.   _I DON'T Know_ are nurses employed by the _____ County Sheriff's Department and assigned to the Jail and as such are responsible for providing prisoners with medical care. These defendants are representative of a class, within the meaning of Rule 23, Federal Rules of Civil Procedure, consisting of all nurses employed at the Jail. This class (hereinafter referred to as Defendant Class II) is ongoing and includes all nurses who are or will be in the future assigned to the Jail.

15.   Defendant classes I and II are proper for the following reasons:

(a)   The members of the defendant classes are so numerous that joinder of all of them is impracticable;

(b)   The members of the defendant classes are readily identifiable from the defendant's records;

(c)   There are questions of law and fact common to the defendant classes;

(d)   The claims and defenses of the representative defendants are typical of the claims and defenses of their classes;

(e)   The named defendants will fairly and adequately protect the interests of their classes;

(f)   The prosecution of separate actions by plaintiffs and their class against individual members of the defendant classes would create the risk of inconsistent and incompatible adjudications;

(g)   Adjudications against representative defendants would as a practical matter be dispositive of the interests of the defendant classes and would substantially impair and impede the ability of the defendant classes to protect those interests.

16.   Defendant(s) [names of County Supervisors] are, and at all times relevant herein have been, [title of defendant(s)], and as such are responsible for the maintenance and operation of [name of institution], and are responsible for the welfare of the inmates of these jails and for the control of persons, including defendants named above herein assigned to operate said institution. Defendant supervisors constitute the governing body of _Butte_ County and are responsible for the allocation of funds for all county purposes, maintenance of county jails not excluded, pursuant to Penal Code §4015.

17.   Defendants _Captain and all of them_ constitute the California Board of Corrections at all times herein relevant and as such are responsible for authorizing reimbursement to counties for the cost of incarcerating state prisoners held on parole holds and/or violations (California Penal Code §4016.5) said reimbursement to be used for county jail upkeep, maintenance and services; administration and allocation of expenditures to county jail facilities from County Jail Capital Expenditure Fund (California Penal Code §6029.1), and are to consider, in allocating said funds, the extent to which the county has utilized reasonable alternatives to pre- and post-conviction incarceration (California Penal Code §6029.1(5)); and are responsible for inspecting county jail facilities (California Penal Code §6031.1) regarding the availability to prisoners of recreation facilities, treatment services, and compliance with the California Minimum Standards (California Administrative Code, Title 15), and are to make reports to the California Legislature specifying those areas in which the local facility has failed

to comply (California Penal Code §5031.1(c)).

18.    All the individual defendants as well as the County of *Butte* shall hereinafter be referred to collectively as "defendants" which term shall be used to mean defendants and each of them, unless otherwise specified.

19.    Defendants and each of them are, and at times mentioned herein have been, the agents, servants, and employees of one another, and in doing the acts and maintaining the conditions herein complained of, are and have been acting within the course and scope of said agency and employment.

20.    In doing all the acts and omissions, and in maintaining the conditions, herein described, defendants, and each of them, separately and in concert, have been and are acting under color of the statutes, ordinances, regulations, custom and usages of the State of California and County of *Butte* . Said acts and omissions were committed and conditions were maintained by defendants personally and through actions of their agents and subordinates, acting pursuant to instructions from defendants.

21.    Other agents, servants and employees of defendant *all of Them*, not specifically named herein, work at [name of institution] and carry out the directions and policies of *Butte all of Them here* shall hereinafter be referred to as "officers," the term by which they are referred to within the Jail. Included within the scope of their employment is the care, treatment, and control of the prisoners at the Jail.

## STATEMENT OF THE CASE

22.    Defendants deny plaintiffs meaningful and adequate contact with the general community by doing the following:

    (a)    Opening, delaying and reading prisoners' mail from attorneys and others;

    (b)    Limiting the time, frequency and duration of prisoners' personal visits;

    (c)    Prohibiting physical contact during prisoners' personal visits and prohibiting conjugal visits;

    (d)    Denying prisoners and their visitors of privacy and monitoring or taping conversations during visits without notice or permission;

    (e)    Requiring visitors to wait long periods of time before visits and treating visitors in a rude manner;

    (f)    Denying pretrial prisoners night visits;

    (g)    Denying prisoners direct access to telephones to make outgoing calls on a reliable basis;

    (h)    Prohibiting prisoners from receiving incoming telephone calls; and

    (i)    Prohibiting prisoners from receiving through the mail or from visitors newspapers, magazines, books, religious texts, reading material, and other forms of written communication from and/or information about the outside world. Any access to written materials provided is done so in an arbitrary and limited way to a very minuscule number of prisoners.

23.    Defendants deny plaintiffs the opportunity to personally consult with their attorneys in private. Attorney-client interviews occur in a small number of attorney-client interview rooms, which are often in use, thereby forcing other prisoners and their attorneys to confer on the tiers, hallways and decks, within the hearing of other prisoners and jail personnel. The attorney interview rooms are often used by other than attorneys, i.e., parole officers, probation officers, bail bondsmen, and are thereby made less available for attorney-client consultations in confidence.

24.    Defendants deny plaintiffs, pretrial and sentenced, access to a law library, legal materials and supplies, and equipment with which to do legal writing. There is no law library in the jail. Pro per prisoners are granted access to the County Law Library only by court order, and those plaintiffs who are pro per are at times arbitrarily denied access to the County Law Library in violation of court order. Legal supplies and equipment to be provided pro per litigants by court order are often not provided, or are taken from the prisoner by guards and not resupplied. Plaintiffs are denied access to "jailhouse lawyers" by deliberate separation and segregation.

25.    Defendants deny plaintiffs adequate opportunity to physically exercise themselves, recreate and entertain themselves, and thus subject plaintiffs to physical deterioration and excruciating boredom. All prisoners are denied access to fresh air and sunshine. The jail gymnasium is available infrequently, irregularly, and arbitrarily, to a limited number of prisoners. There is no posted or acknowledged exercise schedule, nor does the availability of recreation conform to any known schedule. Certain classifications of prisoners are denied any access to exercise without rational justification. Denial of access to exercise is used as a form of single or group discipline without due process of law. All prisoners are housed in cells so small and/or overcrowded, exercise within the cell is virtually impossible.

26.    Prisoners are denied a reading library, and there are no _elie Law/library_ County Library services regularly or reliably provided to prisoners in the jail. A small cart containing used paperback books exists within the jail, but most prisoners have never had access to its contents. The books on the cart are provided by the _Butte_ County Library, and consist of worthless dime novels of little, if any, educational or intellectual value. Prisoners cannot request books from the library, and have no voice in the selection of those few books provided.

27.    Defendants confiscate plaintiffs' personal belongings, including but not limited to legal materials, witness lists, correspondence and personal photographs, without justification or acknowledgment of receipt in violation of California law. Items confiscated are provided to the _Butter_ County District Attorney is defendants desire to do so for prosecutorial or informative purposes.

28.    Defendants deny plaintiffs an adequate opportunity to bathe or shower on a daily basis. Access to showers is granted arbitrarily and infrequently, and pretrial detainees are not offered an opportunity to bathe prior to court appearances. Withholding showers is used a form of individual and group punishment.

29.    Defendants deny plaintiffs an adequate diet to support a healthy body, and, as a result, the majority of plaintiffs suffer continuous minor illnesses.

30.    All prisoners in the jail are confined in either single sells or twelve-man cells, without chairs, stools, tables, or desk areas. All areas occupied by prisoners are windowless and without a view of the outside world. With limited exceptions (e.g., court appearances, attorney interviews, visits, sick call, infrequent exercise, etc.) all prisoners (excepting trustees) are confined to their cells twenty-four hours a day.

31.    The physical conditions of plaintiffs' confinement constitute a health threat in that the jail lacks proper heating, cooling and ventilation, and defendants fail to take adequate measures to preserve sanitation and to prevent the spread of contagious diseases. Almost every cell in the jail other than single cells is extremely overcrowded, with prisoners sleeping on the floor, thereby further reducing space available for movement and exercise. Toilets are

12

located inside the cells and prisoners must eliminate body wastes in the immediate presence of their fellow cell-mates.

32.    Both medical care and routine health care at the Jail are, when available at all, inadequate, and usually characterized by a callous disregard of the health and well-being of prisoners and for the basic tenets of sound medical practice. The standards of medical care at the Jail are well below those generally accepted as adequate within the jurisdiction of this court and the State of California.  Defendants do not provide adequate preventive and diagnostic medical services to prisoners upon admission to the Jail. All prisoners already in the Jail are unnecessarily exposed to dangerous medical, psychiatric and/or contagious conditions that new prisoners might possess; and consequently, their lives and health are needlessly jeopardized and sometimes impaired. Defendants at times arbitrarily seize medication and/or drugs from prisoners upon admission to the Jail, even though such medication may be lawfully prescribed and necessary to maintain the prisoner's health during chronic illnesses, such as epilepsy; as a result newly admitted prisoners often suffer seizures or great discomfort and other adverse effects resulting from sudden deprivation of such medication. Prescriptions given by the prisoner's physician prior to incarceration are often not provided after incarceration. Prisoners who manage to get medication while in the Jail often receive inappropriate dosages of the previously prescribed medication, and are given a day's dosage to be taken at one time, contrary to the physician's instructions, and suffer adverse side effects as a result. Inadequate substitutes for previously prescribed medications are provided. Medication usually is distributed to prisoners by nurses at hours convenient to the defendants and not to the medical needs of the prisoner, and prisoners often receive no medication at all when they are away from the jail in court.

Medical care when given is frequently grossly inadequate and inappropriate.  Prisoner requests for medical evaluation and treatment are often ignored.  Medical diagnosis and treatment is often provided by nurses without an examination of the prisoner by a physician. Prisoners with serious non-grave illnesses are denied access to specialists at county expense, and their illnesses therefore go untreated while they are incarcerated. Treatment provided to prisoners does not extend beyond the most minimal medical response, and prisoners are not given treatment which would either cure their illnesses, or prevent reoccurrences and/or the other effects of inadequate treatment. Such treatment is only provided prisoners who are able to pay for them.

33.    Prisoners are not given routine preventive or corrective dental care at county expense if they are indigent.  Prisoners who are indigent are informed that, as a matter of policy, teeth which are missing fillings, decayed or painful will be pulled, only.  Because of this policy, indigent prisoners suffer severe toothaches on a daily basis rather than lose their teeth, and dental problems which could be resolved inexpensively become so serious and painful that removal of the tooth is the only remaining option.

34.    Nursing personnel at the Jail are engaged in the unauthorized practice of medicine in violation of the law of California in that said nurses without adequate supervision make decisions whether to treat prisoners and/or whether to refer prisoners to a physician.

35.    Many unconvicted prisoners admitted to the Jail are drug addicts, or are dependent on methadone, and suffer withdrawal symptoms shortly after admission to the Jail.  These persons are at times immediately housed in tanks and/or cells with other prisoners not suffering withdrawal symptoms, creating confusion, anger and the potential for violence. Although they are required to do so by California Health and Safety Code §11222, defendants make little or

no attempt to provide prisoners under their care, whom they have reasonable cause to believe are addicted to controlled substances, with the medical care necessary to ease symptoms of withdrawal from those symptoms, including the failure to provide methadone for those lawfully entitled to it.

35.    There is no psychiatrist or psychologist available to prisoners with psychiatric problems, who therefore receive inadequate treatment of their conditions.    Supervision of mentally disturbed prisoners is inadequate, and little medical or psychological treatment is provided for them.  Medically disturbed prisoners are often housed indiscriminately with other prisoners, creating confusion, anger and a potential for violence.  No attempt is made to transfer mentally ill prisoners to medical rather than security environments, nor are such prisoners evaluated for that possibility by trained psychiatric personnel  As a result of all the above, suicide attempts by disturbed prisoners are not uncommon.

36.    Defendants' rules and regulations which govern the operation of the jail, conduct of prisoners, disciplinary due process, and the availability of services (recreation, religion, medical treatment, library access, reading material, telephone use, visitation, access to commissary, etc.) are not posted anywhere in the jail so that all prisoners are not afforded due process notice of their rights and responsibilities.  The only list of jail rules provided to prisoners is on the back of their booking sheets.  Portions of these rules are vague (e.g., "Inmates will not keep excessive amount (sic) of paper, books, commissary articles or any food in the cell.") and therefore fail to provide prisoners with sufficient notice of prohibited conduct.  This list of rules is grossly inadequate to fully inform prisoners of their responsibilities, and in no way do they inform them of their rights or of services provided by the jail.  Rules, whether known to the prisoners or not, are selectively enforced by the defendants.  Other rules are enunciated by officers on and ad hoc basis, frequently after and "offense" has allegedly occurred.  These "rules" vary from officer to officer, shift to shift, and prisoner to prisoner, according to varying attitudes, moods, and relationships.

38.    Defendants impose punishment upon prisoners for violations of Jail rules without notice, hearing, or opportunity to speak on one's own behalf to contest the charges and/or discipline.  No standardized punishments exist for violations of either written or unwritten rules.  Instead, penalties, like rules, are applied on an arbitrary ad hoc basis.  Penalties are not necessarily limited to the known alleged offender.  Sometimes an entire housing area of prisoners is punished for an infraction allegedly committed by one of their number.  Punishments include, but are not limited to, withdrawal of privileges, solitary confinement in isolation cells, placement in the "cold tank" (see below), loss of television, sack lunches, and denial of exercise or church.  All punishments may be levied for an indefinite period of time, the length of punishment having no written or rational relationship to the alleged offense.

39.    The defendants govern plaintiffs' conduct and therefore their lives with a reign of terror, the principal ingredient of which is the constant threat of and use of the "cold tank" as a form of punishment.  Newly booked prisoners who are allegedly unruly or combative are often placed in the "cold tank" for indefinite periods of time.  Other prisoners are placed in the "cold tank" for periods ranging from hours to days as a form of discipline.  Whole groups of prisoners are at times put in the "cold tank" for the alleged infraction of one prisoner, and their stay too is indefinite.  The threat of confinement in the "cold tank" is widely used to control prisoners who allegedly violate jail rules or policy, and to control prisoners who are either verbally or by judicial means attempting to alter the conditions of their confinement.  The "cold tank" is so threatening and frightening to prisoners, their freedoms of expression under the United States Constitution

are notably "chilled."

Prisoners punished by incarceration in the "cold tank" are therein subject to physical abuse and/or confinement with persons so drunk and/or violent that their lives are endangered. Frequently prisoners are stripped to their boxer shorts to increase their suffering, and at times groups of prisoners are chained together in the "cold tank" for indefinite periods of time. Prisoners so punished are often not fed at all or receive nutritionally wholly inadequate sack meals.

The "cold tank" is referred to by the defendants as a "holding cell" although it is rarely used for that neutral purpose. There are, in fact, two "cold cells" in the Jail, one lined with thick padding. Both are large cement rooms, containing no mattresses, beds, sinks, or windows. When used for punitive purposes, the temperature in the "cold tank" is reduced to painful and dangerous levels. Toilets in the "cold tanks" are often broken, creating an offensive, repugnant and unhealthy environment. Special fans keep the cold air moving, and thereby intensify the prisoners' suffering.

40.    Prisoners are frequently and arbitrarily subjected to physical brutality by defendant officers in the Jail.

41.    Prisoners are not informed by the defendants of their right to vote in government elections, are not provided with absentee ballots, are not allowed to register to vote, are denied sufficient sources of information upon which to base an intelligent and knowledgeable voting decision, and are thereby absolutely denied their constitutional right to participate as citizens in government.

42.    Prisoners are not allowed to practice their religions within the Jail. One Protestant service is provided to prisoners when a minister is available on Sundays in the gymnasium. Only a very small minority of prisoners, arbitrarily chosen, has access to this service. No religious guidance or services are provided to prisoners beyond what has been described above, and prisoners of other faiths (e.g., Catholic, Buddhist, Muslim, Jewish) are provided with no spiritual counseling, literature or services. All prisoners are denied access to the literature of their faith, including prisoners who request a Bible. Arbitrarily and unjustifiably identified groups of prisoners (e.g., those with pending murder charges, those in protective custody or isolation), are forbidden by jail policy to attend church. The selection of those who will be allowed to attend church on any given Sunday is so limited and arbitrary, it arouses anger, resentment and hostility in those refused attendance toward those granted, thereby increasing the potential for violence and "chilling" the desire of devout prisoners to practice their faith.

43.    Periodically and without good cause, the defendants engage in "shakedown" searches of whole cell blocks, removing all prisoners beforehand so the defendants' activities cannot be observed. Prisoners who resist removal so they can observe the searching of their cells are threatened with and sometimes are placed in the "cold tank." After these searches, prisoners frequently find their commissary items (cigarettes, shampoo, etc.) are gone. Prisoners are never provided with an accounting of or receipt for belongings removed from their cells, legitimately or otherwise.

44.    Defendants fail to abide by California law and their own "Policy and Procedures Manual" in classification of prisoners for purposes of housing. The defendants house sentenced and unsentenced prisoners together, allow prisoners in protective custody to exercise with mentally disturbed prisoners, house mentally disturbed prisoners with sane persons, and fail to insure tanks are racially balanced. In fact, the defendants segregate the races into different areas, and will place a prisoner member of one race into a tank of prisoners composed

15

predominantly of another to inspire the physical intimidation and possible injury of the prisoner in the minority.

45.    Plaintiffs are provided no educational or vocational programs in the Jail, contrary to California law.

46.    Defendants routinely, and as a matter of policy and practice, fail to bring accused prisoners before a magistrate within two days as required by Penal Code §825. Defendants compute plaintiffs incarceration hours according to the hours of the court, and prisoners routinely wait up to nine days before arraignment, or release when charges are not filed.

47.    The County of _Butte_ does not make available to convicted persons the alternatives of either educational or work furlough programs; these programs simply do not exist in _Butte_ County as an alternative to incarceration, or as a means of reducing extreme and ongoing overcrowding in the jail. In spite of this gross lack of services, the defendant CALIFORNIA BOARD OF CORRECTIONS fails to use its powers under Penal Code §6029.1 to withhold funds from the County Jail Capital Expenditure Fund to compel the utilization of these humane, workable and inexpensive alternatives to total incarceration of persons sentenced to serve local jail time.

48.    Defendant CALIFORNIA BOARD OF CORRECTIONS fails in its duty under Penal Code §6031.1 to conduct an objective, accurate and thorough inspection of the _____ County Jail to determine if it provides adequate recreational facilities, treatment services, and is in compliance with the California Minimum Standards (California Administrative Code, Title 15), nor does the defendant CALIFORNIA BOARD OF CORRECTIONS fulfill its duty under Penal Code §6031.1(c) to accurately report to the California Legislature on conditions in the _Butte_ County Jail, specifying those areas in which the Jail has failed to comply with the requirements of law.

By these acts of commission or omission, the defendant CALIFORNIA BOARD OF CORRECTIONS conspires with the other named defendants herein to deny prisoners incarcerated in the Jail their constitutional rights.

49.    Defendants perpetuate conditions and practices in the Jail which they know or have reason to know are deleterious to the physical and mental well-being of the prisoners for whose health and well-being they are responsible. The brutality, and indifference perpetrated on prisoners by defendants and their agents/employees and the resultant physical suffering and mental anguish suffered by plaintiffs ensure that plaintiffs will suffer mental distress and anxiety while confined in the Jail. For pretrial detainees, this results in deterioration of their ability to defend themselves in court.

50.    Defendants' treatment of pretrial detainees in the Jail is particularly egregious in view of the fact that convicted prisoners in the _Butte_ County Jail are usually afforded the alternative of confinement in markedly superior environments (County road camps and work farms) and prisoners sentenced to state or federal prisons are transferred to environments also markedly superior in services. personal freedoms, protection of constitutional rights, and the provision of exercise, fresh air, recreation, entertainment, educational and vocational opportunities, a healthier diet, better medical care, and access to a law library.

### FIRST CLAIM FOR RELIEF:  SUMMARY PUNISHMENT
### OF PRETRIAL PRISONERS WITHOUT DUE PROCESS.

51.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 50, inclusive.

52.    Pretrial detainees are presumable innocent and for the most part are confined in lieu of bail, which they are too poor to afford to ensure their attendance at trial.  Yet defendants inflict upon these prisoners conditions, restrictions and constraints which individually and in the aggregate constitute summary punishment without even a semblance of due process of law in contravention of 42 U.S.C. §1983 and the Fifty and Fourteenth Amendments to the United States Constitution.

## SECOND CLAIM FOR RELIEF:  DENIAL TO PRE-
## TRIAL PRISONERS OF EQUAL PROTECTION OF LAW.

53.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 50, inclusive.

54.    Most pretrial prisoners are detained only because they are financially unable to post bail.  By contrast, wealthier persons awaiting trial who can afford to post bail are not incarcerated or subjected to the conditions which these plaintiffs experience.  Wealthier persons have, inter alia, unrestricted access to counsel; the opportunity to do legal research and to contact witnesses; the opportunity to obtain proper rest and nutrition and to maintain their physical and emotional health so that they can effective assist in preparation of their trials and appear as effective witnesses for themselves.  Defendants have denied and will continue to deny all these rights to pretrial prisoners solely because of their poverty.

55.    Defendants, by committing these acts, omissions and practices complained of in this claim for relief are depriving pretrial prisoners of equal protection of the laws in violation of 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution.

## THIRD CLAIM FOR RELIEF:
## PREJUDICE TO A FAIR TRIAL.

56.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 50, inclusive.

57.    The physically and psychologically oppressive conditions at the Jail impair unconvicted prisoners' mental and physical health so that they cannot be effective witnesses for themselves or assist in preparing their defenses, and upon plaintiffs' information and belief, cause many unconvicted prisoners to plead guilty to avoid further confinement in the Jail.

58.    The conditions to which presumably innocent prisoners awaiting trial are subjected in the Jail, as well as the restrictions placed on their access to counsel and to the courts undermine the integrity of the entire trial process and infringe on unconvicted prisoners's rights to a fair trial thereby depriving these prisoners of rights guaranteed them by 42 U.S.C. §1983 and the Fifth, Sixth, Seventh, and Fourteenth Amendments to the Constitution of the United States.

## FOURTH CLAIM FOR RELIEF:  DENIAL OF
## ACCESS TO COUNSEL AND TO THE COURTS.

59.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 24, inclusive, and 28.

60.    Defendants restrict prisoners' access to courts and to counsel and to the effective assistance of counsel by, among other thing:

(a)    Reading prisoner-attorney mail;

(b)    Reading and delaying prisoner mail to and from courts;

(c)     Failing to provide private attorney-prisoner interviews by a failure to provide adequate private space for attorney-client interviews;

(d)     As a form of arbitrary discipline, the defendants refuse to permit prisoners phone calls to attorneys, investigators, and witnesses.

61.     Defendants further deny pretrial prisoners access to the courts and their rights to assist counsel in preparing a defense by making it impossible for prisoners to prepare legal documents or assist counsel in legal research to inaccessibility of law books or to locate and prepare witnesses due to the restrictions on communications.

62.     Defendants' actions, practices, policies and omissions in restricting and/or denying prisoners their constitutionally protected rights of access to the courts and to counsel and to petition for the redress of grievances deprive plaintiffs of rights secure them by 42 U.S.C. §1983 and the First, Fifty, Sixth and Fourteenth Amendments to the United States Constitution.

## FIFTH CLAIM FOR RELIEF: DENIAL OF RIGHTS OF
## EXPRESSION, COMMUNICATION, AND ASSOCIATION.

63.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 22, inclusive, and 24 and 26.

64.     Defendants censor the flow of communication to and from prisoners and effectively isolate prisoners from the outside world in contravention of plaintiffs' rights guaranteed them by 42 U.S.C. §1983 and the First, Fourth and Fourteenth Amendments to the United States Constitution.

## SIXTH CLAIM FOR RELIEF: DENIAL OF DUE PROCESS
## IN DISCIPLINARY AND ADMINISTRATIVE PROCEEDINGS.

65.     Plaintiffs incorporated by reference the allegations contained in paragraphs 1 through 50, inclusive.

66.     Defendants mete out discipline to all prisoners and in effect subject pretrial prisoners to punitive, high security classification in a capricious manner without the rudiments of fundamental fairness, namely prior notice of what constitutes a disciplinary infraction and what punishments attach, prior notice of and opportunity for a prompt hearing before an impartial tribunal at which hearing the accused may be represented by counsel or counsel substitute, confront adverse witnesses, and present favorable evidence, and a reasoned decision with findings based on the evidence. Defendants' failure to provide these protective procedures deny plaintiffs due process of law as guaranteed by 42 U.S.C. §1983 and the Fifth and Fourteenth Amendments of the United States Constitution.

## SEVENTH CLAIM FOR RELIEF: CRUEL
## AND UNUSUAL PUNISHMENT.

67.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 50, inclusive.

68.     The conditions, restrictions and constraints, individually and in the aggregate, suffered by prisoners at the hands of defendants constitute cruel and unusual punishment in contravention of plaintiffs' rights under 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments to the United States Constitution.

## EIGHTH CLAIM FOR RELIEF:

## INADEQUATE MEDICAL CARE.

69.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 21, inclusive, and 25, 28, 29, and 31 through 36, inclusive.

70.   Defendants provide plaintiffs with inadequate superficial care in violation of plaintiffs' rights to due process of law secured to them by 42 U.S.C. §1983 and the Fifth and Fourteenth Amendments to the United States Constitution.

## NINTH CLAIM FOR RELIEF:
## VIOLATIONS OF CALIFORNIA LAW.

71.   Plaintiffs incorporate hereby by reference the allegations contained in paragraphs 1 through 50, inclusive.

72.   Defendants confiscate plaintiffs' personal property without providing a receipt in violation of California Penal Code §4003.

73.   Defendants fail to provide plaintiffs' care and treatment by a physician 24 hours per day and deny plaintiffs' treatment by their private physician in violation of California Penal Code §4023.

74.   Jail nurses are engaged in the unauthorized practice of medicine, in violation of California Business and Professions Code, §§2141, 2392, and 2726.

75.   Defendants fail to provide prisoners who are addicted to controlled substances with medical treatment necessary to ease the symptoms of withdrawal in violation of California Health and Safety Code §11222.

76.   The defendants fail to enforce, monitor and abide by the terms of California Administrative Code, Title 15, "Minimum Standards."

77.   Defendants fail in their duty pursuant to Penal Code §825 to bring newly incarcerated prisoners before a magistrate within two days.

78.   Defendants fail to segregate sentenced inmates and pretrial detainees in violation of Penal Code §4001.

79.   Defendants fail to remove prisoners who have contagious diseases from the general population of the Jail in violation of Penal Code §4012.

80.   Defendant members of the _Butte_ County Board of Supervisors fail to provide the funds for adequate food for the prisoners in violation of Penal Code §4015.

81.   The defendant California Board of Corrections (Prison Terms) does not withhold reimbursement funds from _Butte_ County Jail pursuant to its statutory obligation under Penal Code §4016.5.

82.   The defendants do not keep records of all disciplinary infractions and punishments administered to prisoners in compliance with the requirements of Penal Code §4019.5(e).

83.   The defendants do not afford all prisoners in the Jail an opportunity to exercise religious freedom in compliance with Penal Code §4027.

84.   The defendant California Board of Corrections fails in its statutory duty pursuant to Penal Code §6029.1 to withhold funds from the County Jail Capital Expenditure Fund to compel utilization of the County of _Butte_ alternatives to incarceration.

85.   Defendant CALIFORNIA BOARD OF CORRECTIONS fails in its duty under Penal Code §6031.1 to conduct an objective, accurate and through inspection of the _Butte_ County Jail to determine if it provides adequate recreational facilities, treatment services, and is in compliance with the California Minimum Standards (California Administrative Code, Title 15), nor does the defendant CALIFORNIA BOARD OF CORRECTIONS fulfil its duty under

19

Penal Code §6031.1(c) to accurately report to the California Legislature on conditions in the _Butte_ County Jail specifying those areas in which the Jail has failed to comply with the requirements of law.

## DECLARATORY JUDGEMENT

86.    An actual and substantial controversy exists between plaintiffs and defendants, in that plaintiffs complain that defendants are violating and will continue to violate their most fundamental rights under the United States Constitution and the laws and statutes of the United States and California and commit acts and omissions threatening plaintiffs' lives and health. Defendants have persisted in subjecting plaintiffs to unconstitutional and harmful conditions despite protests by the Jail's prisoners. Defendants may in the future make minor changes in the Jail from time to time in response to protests but they will do nothing substantial to remedy the unconstitutional and harmful conditions to which they subject plaintiffs or to change the policies and procedures. Defendants deny that their actions are illegal or unconstitutional or cause injuries to plaintiffs.

## INJUNCTIVE RELIEF

87.    All of the conditions and practices separately and in the aggregate make incarceration in the Jail severe, punitive and restrictive. The plaintiffs are now suffering and will continue to suffer irreparable injury as a direct and proximate result of the conditions and practices herein alleged and are without a plain, speedy, adequate remedy at law in that:

(a)    Money damages will not adequately compensate plaintiffs for denial of their Civil Rights or for time confined in the Jail pursuant to pretrial detention under conditions that could be successfully challenged in the Courts.

(b)    Plaintiffs are psychologically and physically harmed and damaged; and unconvicted prisoners are induced to plead guilty to criminal charges pending against them in order to avoid the conditions and practices herein described which exist at the Jail.

(c)    Money damages for plaintiffs' injuries are extremely difficult to calculate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1.    That the Court certify this action as a class action.

2.    That the Court personally view the _Butte_ County Central Jail to gain assistance in rendering a ruling.

3.    That the Court enter a judgement declaring that defendants, and each of them, through the individual and collective acts, practices, and omissions complained of herein, have subjected and are subjecting plaintiffs to:

a.    Summary punishment without due process of law in contravention of 42 U.S.C. §1983 and the Fifth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' First Claim for Relief;

b.    Denial of equal protection of law in contravention of 42 U.S.C. §1983 ant the Fourteenth Amendment to the United States Constitution as enumerated in plaintiffs' Second Claim for Relief.

c.    Prejudice to fair trial in contravention of 42 U.S.C. §1983 and the Fifth, Sixth, Seventh and Fourteenth Amendments to the United States Constitution as enumerated in

plaintiffs' Third Claim for Relief;

    d.    Denial of access to counsel and the Courts in contravention of 42 U.S.C. §1983 and the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Fourth Claim for Relief;

    e.    Denial of Rights of Expression, Communication and Association in contravention of 42 U.S.C. §1983 and the First, Fourth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Fifth Claim to Relief;

    f.    Denial of due process in disciplinary and classification proceedings in contravention of 42 U.S.C. §1983 and the Fifth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Sixth Claim for Relief;

    g.    Cruel and unusual punishment in contravention of 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Seventh Claim for Relief;

    h.    Denials of adequate medical care in contravention of 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution as enumerated in plaintiffs' Eighth Claim for Relief;

    i.    Violations of California Penal Code §§825, 4001, 4003, 4012, 4015, 4016.5, 4019.5(e), 4023, 4027, 6029.1, 6031.1, 6031.1(c), Business and Professional Code §§2141, 2392 and 2726, Health and Safety Code §11222 as enumerated in plaintiffs' Ninth Claim for Relief;

    4.    That the Court issue preliminary and permanent injunctions assuring that pretrial prisoners are accorded all of the rights and privileges of the innocent; and that all prisoners not be subjected to cruel and unusual punishment and not denied their other constitutional and statutory rights. More specifically, the plaintiffs should be assured by the plan, *inter alia*:

    a.    That the prisoners be accorded essential preventive medical care and receive adequate and sound medical, psychiatric and dental health care;

    b.    That prisoners addicted to controlled substances be accorded with reasonable medical care to ease the symptoms of withdrawal and not be housed with other non-addicted inmates during their period of withdrawal.

    c.    That a regular recreational and exercise program, outside of the cells, be expanded and scheduled and that all prisoners be allowed outdoors for sufficient periods to insure their continuous physical and mental well being;

    d.    That the Jail and its prisoners living areas therein be kept in a safe and healthy condition, with proper heating, ventilation and provisions for sanitation;

    e.    That pretrial prisoners be accorded private and adequate living space in one man cells with reasonable lighting and furnishings;

    f.    That defendants be enjoined from placing pretrial and sentenced prisoners in overcrowded cells and from requiring some pretrial and sentenced prisoners to sleep on the floor.

    g.    That education and vocational work programs be established;

    h.    That the prisoners have continuous opportunity to talk and associate with each other, for legitimate purposes including but not limited to socializing;

    i.    That the prisoners be entitled to receive through the United States mail or from visitors and retain books, magazines, newspapers, law books and legal materials and be provided with direct access to an adequate reading and law library with supplies and equipment for prisoners' legal work.

j.      That visiting conditions be established which assure decency, comfort, privacy of conversation, conjugal rights, and visiting periods of adequate duration and frequency, and that prisoners' visitors not be required to wait intolerable lengths of time before visits occur.

k.      That no limitations be placed on persons an inmate may see, communicate with and receive communications from;

l.      That inmates be assured of reliable access to telephones to make outgoing calls and to receive incoming calls, and that such phones not be wiretapped or monitored in any manner.

m.      That a reasonable set of rules regarding intra-jail behavior and inmates rights be promulgated in English and Spanish and provided for each prisoner upon entry to the Jail and posted prominently throughout the Jail;

n.      That no discipline or re-classification of an inmate occur without first affording him notice, the right to confrontation of accusers, the right to cross-examine adverse witnesses, the right to present evidence and testimony, and a written decision containing reasons therefore and evidence relied upon, and hearing before an impartial tribunal;

o.      That prisoners be protected from unprovoked assaults by Jail officers;

p.      That plaintiffs be assured of adequate opportunity to bathe every day;

q.      That all prisoners, including the indigent, have reasonable opportunity to obtain life necessities and amenities;

r.      That prisoners have the opportunity to privately and confidentially communicate with their attorneys in a room provided by defendants for that purpose;

s.      That prisoners be allowed to retain in reasonable quantities their personal belongings, including but not limited to, correspondence and photographs, and not be subjected to unlawful searches and seizures thereof;

t.      That Jail living conditions be humanized and provided with reasonable furnishings and windows to the outside world;

u.      That prisoners be afforded an adequate, nutritious, and wholesome diet, including eggs, milk and fresh fruit and vegetables in compliance with California Administrative Code, Title 15;

v.      That mentally disturbed inmates be provided adequate psychiatric care, and not be housed with non-disturbed inmates;

w.      That the use of the "cold tank" as a means of control and discipline be forbidden;

x.      That blanket punishments of groups of prisoners for the wrongdoing of one be forbidden;

y.      That all prisoners eligible be afforded an opportunity to register to vote, be informed, and to vote, either directly or by absentee ballot;

z.      That all prisoners of all faiths be afforded an opportunity to practice their chosen faith, including be allowed access to religious literature, visits from religious leaders, church services and a diet conforming to church dogma;

a1.     That defendants be ordered to conform their classification plan and practice to the requirements of California law;

b1.     That defendants be ordered to bring all newly accused persons before a magistrate within two days within the meaning of Penal Code §825;

c1.     That defendant California Board of Corrections be ordered to use its powers pursuant to Penal Code §6029.1 to withhold funds from the County Jail Expenditure Fund to compel the County of _Butte_ to develop and implement alternatives to incarceration.

22

## TABLE OF AUTHORITIES CITED

Alvarez v. Wilson, 431 F.Supp. 136
    (N.D. Ill. 1977

Barlow v. Marion County Hospital District,
    88 F.R.D. 619 (M.D. Fla. 1980)

Battle v. Anderson,
    564 F.2d 388 (10th Cir. 1977)

Bell v. Wolfish,
    441 U.S. 520 (1979)

Bonner v. Coughlin,
    517 F.2d 1311 (7th Cir. 1975)

Brenneman v. Madigan,
    343 F.Supp. 141 (1974)

Brown v. Peyton,
    437 F.2d 1228 (4th Cir. 1971)

Campbell v. McGruder,
    416 F.Supp. 100 (D. D.C. 1975)

Condol v. Baltimore & O.R. Co.,
    199 F.2d 400 (D.C. 1952)

Contract Buyers League v. F. & F. Ins.,
    300 F.Supp. 210 (D.C. Ill. 1969), aff'd
    420 F.2d 1191, cert. denied 19 S.Ct. 40

Cooper v. Pate,
    378 U.S. 546 (1964)

Cruz v. Beto,
    405 U.S. 319 (1972)

Cudnick v. Kreiger,
    392 F.Supp. 305 (D.C. Ohio 1974)

Cunningham v. Jones,
    567 F.2d 653, (6th Cir. 1977)

Davis v. Jahradnick,
    600 F.2d 458 (5th Cir. 1979)

Dellums v. Powell,
    566 F.2d 216 (D.C. Cir. 1977)

Dewell v. Lawson
    489 F.2d 877 (10th Cir. 1974)

Downs v. Department of Public Welfare,
    368 F.Supp. 454 (E.C. Pa. 1973)

Eskra v. Morton, 380 F.Supp. 205
    (D.C. Wis (1974)

Estelle v. Gamble,

Spain v. Procunier
        600 F.2d 189 (9th Cir. 1979)

Supreme Wine Co. v. Distributors of New England,
        198 F.Supp. 318 (D.C. Mass. 1961)

Teterud v. Burns,
        552 F.2d 357 (8th Cir. 1975)

Todaro v. Ward,
        565 F.2d 48 (2nd Cir. 1977)

United States v. Lilly,
        576 F.2d 1240 (5th Cir. 1987)

United States v. Savage,
        482 F.2d 1371 (9th Cir. 1973)

Weathers v. Peters Realty Corp.,
        499 F.2d 1197 (C.A. 6 Ohio 1974)

Whirl v. Kern,
        407 F. 2d 781 (5th Cir. 1979)

Williams v. Edwards,
        547 F.2d 1206 (5th Cir. 1977)

Wolff v. McDonell,
        418 U.S. 539 (1974)

Wofish v. Levi,
        573 F. 2d 118 (2nd Cir. 1978)


STATUTES

Federal Rules of Procedure
        Local Rule 1248

California Administrative Code,
        Title 15 §1081 42 U.S.C. 1983

United States Constitution, Art. III


35

1   I declare under penalty of perjury that the
2   Foregoing is true and correct. Edgar Lee Warren
3   can not Read Are Write, BUt Warren Did what
4   He can To get This Right.
5
6   Edgar Lee Warren
7   35 County Center DR.
8   Oroville, Ca 95965
9
10  Napa State Hospital
11  2100 Napa-Vallejo Highway
12  Napa, Ca 94558-6293
13  Public (707) 253-5000
14  TDD (707) 253-5768
15  Fax (707) 253-5513
16
17  Edgar Lee Warren is Waiter To go To
18  Napa State Hospital so iF Warren is
19  not here that where Warren Will be.
20
21  Signed _____ day of _____ 2008#
22
23              Edgar Lee Warren
24              (PlaintiFF's signature)
25
26
27
28



Edgar Lee Warren
[??] County Center Dr
Oroville, CA 9596[?]

CONFIDENTIAL
LEGAL MAIL
Federal mail
Federal Court

BUTTE COUNTY JAIL INMATE

OFFICE OF THE CLERK, U.S.
DISTRICT COURT NORTHERN
DISTRICT OF CALIFORNIA
45 GOLDEN GATE AVENUE
SAN FRANCISCO, CALIFORNIA
94102

JS4

RECEIVED

08 JUN 26 PH12:43

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA